UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Jonathan Michael Ruiz

versus

James LeBlanc, Et Al.

CIVIL ACTION

No. 13-6373-JVM A(1)

Hon. Janis van Meerveld

FILED SEP -9 2016
WILLIAM W. BLEVINS

## AMENDED COMPLAINT

This Honorable Court issued an ORDER for the plaintiff herein to file an Amended Complaint in this matter not to exceed five pages. Rec. Doc. 26 & 28. The purpose is to give an opportunity "to clearly allege a plausible Eighth Amendment claim based on the deprivation of exercise." and more specifically the Court wants there to be "alleged sufficient facts to plausibly establish that those injuries constitute a 'substantial risk of serious harm.'" Ruiz v. LeBlanc, No. 14-30500, 2016 WL 1397625, at *3 (5th Cir. Apr. 8, 2016)(citations and footnotes omitted).

0. The plaintiff herein incorporates by reference his prior complaint filed in late 2013.

1. Given current norms, exercise is a basic human need that is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being; it is an indispensable component of preventive medicine.

2. It is common knowledge, widely available, publicly known, and universally accepted in the medical and mental health communities and is well-publicized in medical, psychological, health, and fitness publications; news health reports; televised medical, health, and fitness programs; American Correctional Association (ACA) Standards documents; findings by courts in jurisdictions nationwide; and other various media mediums that a person is seriously threatened and at a substantial risk of serious and irreparable harm where there is a significant deprivation of exercise and that the harms stemming from that deprivation include heart problems, coronary artery disease, muscle and bone deficiencies, poor posture, metabolic abnormalities, obesity, digestive malfunctioning, depression, arthritis, lethargy, fatigue, stress, anxiety, acid reflux disease, strokes, heart attacks, aneurysm, osteoporosis, and many other harms. See, e.g., The World Book Encyclopedia (ISBN -unknown-), Merck Manual of Medical Information (www.Merck.com), American Medical Association ((312)464-5000, www.ama-assn.com or .org), any local newspaper article on exercise.

___ Fee_____
___ Process_____
X Dktd_____
___ CtRmDep____
___ Doc. No.____

3. On Sept. of 2011, Defendant Robert Tanner, the RCC Head Warden, admitted and explained in the RCC publication Chainlink Chronicles that a lack in exercise will result in acute symptoms/injury; showing actual knowledge of the potential risks.

4. The United Nations-including the United States as a principal member in agreement with the UN- approved the Standard Minimum Rules For the Treatment of Prisoners, in particular the sections on "Exercise and Sport" and "Instruments of Restraint," which shows an evolving standard of decency that mark the progress of a maturing society.

5. Here, both in duration and severity, the nature of plaintiff's deprivation of exercise was significant and serious, and apparently no alternatives were made available to mitigate the effects of the deprivation.

6. In particular, RCC's Ext/LD units house offenders in a small fixture-crammed cell that has no A/C, fan, or window; It is not possible or extremely dangerous to exercise in-cell during the summer as the closed-in environment that is hot and humid (which are not monitored on the Ext/LD units) would cause immediate overexhaustion and fainting spells upon the plaintiff and otherwise has caused extreme pain and physical bruising and cutting from the contacts with the fixtures in-cell and from the restraints out-of-cell and knee and back sprains from walking attempts; therefore, completely ineffective in addressing plaintiff's need to exercise.

7. During the years of 2012 and 2013, the plaintiff made many sickcalls (Health Care Requests) and complained of many harms being inflicted upon him as a result of the conditions of his inhumane confinement without out-of-cell exercise on RCC's Ext/LD such as imminently fatal heart problems, coronary artery disease, irritable bowel syndrome, chest pains, loss of blood circulation and feeling in limbs, possible strokes, fainting, vomiting, constipation, fluctuation of weight and blood pressure, loss of vision, extreme heart burn, stomach acids burning inside of mouth and lips, uncontrollable shaking and muscle spasming, multiple joint pains, disfigurement of spine, depression, nervousness, stress,

panic attacks, difficulty breathing, insomnia, emotional anguish, irrational fear, and induced antisocial personality disorder, to name the most frequent and significant complaints.

8. When the plaintiff made the above-listed complaints to the RCC medical staff, the plaintiff was only allowed to verbalize his complaints to the medical staff who in turn wrote down the plaintiff's complaints and relayed those complaints to the doctor who in turn made appointments to see the plaintiff at the Dr.'s leisure.

9. In the same time, to ensure the supervising officials, the Defendants, had actual knowledge of those complaints of serious harms befalling the plaintiff as a result of RCC Ext/LD confinement and the substantial risk of serious harm, the plaintiff wrote numerous letters to the Defendants and detailed the above harms and linked them to the Deprivation of exercise on Ext/LD as a result of the out-of-cell restraint policy created and maintained by those Defendants.

10. On several occasions Doctor McVea, the only physician at RCC, conducted a S.O.A.P. (Doctor Call) by considering the plaintiff's "Subjective" complaints, by making "Objective" observations, by "Assessing" his findings, and by "Prescribing" medication, treatment, further evaluations, or anything else within his power.

11. The plaintiff at those Doctor Calls explained to Doctor McVea that the lack of exercise on Ext/LD were causing his health deterioration; the Doctor responded that he was powerless to allow unrestrained out-of-cell exercising and he could only relay information to the Wardens, which the Doctor explained he did on a routine basis with regard to Ext/LD offenders on long-term cell confinements, such as plaintiff.

12. On 7/18/12, Doctor McVea assessed the plaintiff with constipation and fatigue and prescribed Milk of Magnesia and to increase physical activity; on that day, the plaintiff's blood pressure (BP) was 131 over 98 and Pulse of 99.

13. On 9/19/12, the nurse assessed the plaintiff as having joint pains and prescribed the plaintiff with 200mg Ibuprofens for 5 days.

14. On 2/13/13, Doctor McVea noted plaintiff's high BP 163/101 and Pulse of 115 but

assessed the plaintiff with polyarthralgia and prescribed 250 mg of Naprosyn for 1 year, and also scheduled a Thyroid Cascade, then told the plaintiff that it was extremely important to do more physical exercising.

15. Polyarthralgia is defined as pains in five or more joints. Medical Dictionary: MedLine Plus, (last visited Sept. 23, 2015); Polyarthralgia is also known as Arthritis; Fibromyalgia, and Joint Degenerative Disease; and such a condition can bring on a lifelong and continuous pain in the joints that can be intense and irreparable.

16. On 10/2/13, Doctor McVea assessed the plaintiff with more knee pain and prescribed x-rays and replaced the Ibuprofens with 650 mg Tylenol for 1 year; the plaintiff's BP had been 137/91 and his pulse was 112.

17. On 8/6/14, Doctor McVea assessed the plaintiff with Chronic Tachycardia after noting the plaintiff's BP of 148/102 and Pulse of 149 and prescribed Metropolol 50 mg for one year and scheduled an EKG.

18. Tachycardia is a fast heart rate (pulse) that is beyond the resting rate of between 60 and 70 bpm; Tachycardia is an excessive pulse in contrast to the normal pulse of a healthy adult; Such a condition of Tachycardia suddenly afflicting a person as it did the plaintiff is considered life-threatening and classified as a sign of an impending heart attack, stroke, aneurysm, or some coronary artery disease.

19. On 8/19/14, the EKG was carried out upon the plaintiff with the result that the Tachycardia is likely caused by Ischemia and there exists some arythmia; the plaintiff's pulse during the EKG had been 130 bpm.

20. "Ischemia is a deficient supply of blood to a body part (as the heart or brain) due to obstruction of the inflow of arterial blood (as by the narrowing of arteries by spasm or disease)." MedLine Plus Medical Dictionary, (visited Sept. 8, 2014); Ischemia is most likely caused by accumulation of fatty tissue which is in turn likely brought on by a lack of exercise.

21. Coronary Artery Disease is the culprit behind the plaintiff's Tachycardia and

Ischemia, all of which are well-known to be life-threatening conditions that affect the immediate and future health of the plaintiff and fit well within the parameter of a substantial risk of serious harm.

22. During 2014, the plaintiff made many Health care requests concerning shakes, dizziness, chest pains, inability to catch breath, muscle weakness, faintings, cold sweats, and many other symptoms usually associated with CAD or congestive heart failure.

23. The plaintiff in August of 2014 complained to the social workers about the serious psychological harms being done to him as a result of the deprivations in exercise.

24. Soon after, Dr. Gamble diagnosed the plaintiff as having Dysthymia (Depression) and ASPD and prescribed Remron to alleve him of some of the symptoms (Insomnia).

25. In 2015, the plaintiff was X-rayed at Orleans Parish Prison where medical staff found straightening of the spine and mild scoliosis in the neck, highly attributable to the plaintiff's prolonged duration within RCC's Ext/LD without any meaningful, achievable, and nondangerous exercise opportunities.

26. Plausibly, the Defendants had actual knowledge, were subjectively aware, were presented with evidence showing, and drew the inference that the plaintiff was severely suffering from substantial and excessive risks of serious harms that currently afflicts and was afflicting the plaintiff and are long lasting physical and mental injuries caused solely by the overall RCC Ext/LD conditions as a whole of depriving plaintiff of exercise and will continue to afflict the plaintiff's future health just as exposure to Asbestos or cigarette smoke would affect future health, and the Defendants took absolutely no measure to abate that risk to plaintiff's imminent and future health.

Respectfully submitted,

*Jonathan Ruiz*

Jonathan Ruiz
#463296 EHCC
P.O. Box 174
St. Gabriel, LA 70776

## VERIFICATION

I Jonathan Ruiz declare and verify under Penalty of Perjury 28 U.S.C. §1746 that all assertions of fact contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on: 8/31/2016       Signature: *Jonathan Ruiz*

## CERTIFICATE OF SERVICE

I Jonathan Ruiz hereby certify that I have caused to be served by mail a copy of the foregoing document upon the defendants' counsel Michael Courtney Keller on the day of filing.

*Jonathan Ruiz*

Jonathan Ruiz



United States District Court
Eastern District of Louisiana
Clerk of Court
500 Poydras St.
New Orleans, LA 70130

Jonathan Ruiz
#463296 EHCC
P.O. Box 174
St. Gabriel, LA 70776